UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHILLIP EDGAR ROSS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-1286 (RBW) |
| | ) |
| UNITED STATES, and | ) |
| MARJORIE F. CANBY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND OPINION

This matter is before the Court on the motion of defendant, the United States of America ("United States"), for dismissal, or alternatively, summary judgment. The plaintiff opposes the motion, but defendant Marjorie F. Canby has not commented on it.[1]

On May 25, 2004, the plaintiff filed this action with the United States Court of Federal Claims pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (2000), alleging that the United States, as a result of action or omissions of the Department of the Navy and its employee, Marjorie F. Canby, a medical doctor, are liable for negligently performing a "cataract extraction on his right eye" at the United States Naval Hospital on the territory of Guam, during which they "failed to follow generally accepted medical standards," which culminated in the plaintiff's permanent vision loss in his right eye. Verified Complaint ("Compl.") at ¶¶ 1-8. The case was transferred to this Court from the Court of Federal Claims on July 30, 2004. The defendants answered the complaint on May 24, 2005, denying liability and raising several defenses, while

---

[1] The United States and Marjorie F. Canby share counsel and answered the complaint jointly, although the summary judgment filings only appear to be on behalf of the United States.

failing to address the appropriateness of this Court as the proper venue for the litigation of this action.  See generally Federal Defendant's Answer to Complaint ("Answer").

      On July 2, 2007, the United States filed the motion which is the subject of this opinion, seeking to dismiss this action, or alternatively, for summary judgment.  Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment ("Def.'s Mot.") at 1.  In its motion, the United States argues that either dismissal is warranted because this Court is not the proper venue for this action, whereas Guam is, or summary judgment is warranted because the plaintiff has failed to demonstrate that the defendant breached the standard of care, a requisite for maintaining his claim.  Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss, or Alternatively, for Summary Judgment ("Def.'s Mem.") at 5-8.  Specifically, the defendant states that the only concern regarding the plaintiff's medical treatment that is expressed by the plaintiff's expert on the standard of care "focuses exclusively on the actions of the medical personnel at the Guam Seventh Day Adventist Clinic," a "clinic [that] is not affiliated with the Naval Hospital and is not a party to this suit," and therefore summary judgment is proper because the plaintiff has not established a breach of the standard of care by the United States or its personnel.  Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Def.'s Reply") at 3-5.  In opposition, the plaintiff contends that the defendant waived its right to object to venue under Federal Rule of Civil Procedure 12(h)(1) because it neglected to raise the challenge in its complaint or an initial responsive pleading.  Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 2-3.  As to the appropriateness of summary judgment, the plaintiff states that it has proffered evidence sufficiently "establish[ing] the applicable standard of care," as well as "the requisite expert testimony[] that the defendant violated this standard of care, and that it was that deviation that

caused the plaintiff's injury," so accordingly, based on the remaining "triable issues of fact," summary judgment is improper. Id. at 5. For the foregoing reasons, the Court concludes that the plaintiff cannot maintain a claim against the defendants under the Federal Tort Claim Act based on the evidence in the record, and summary judgment to the defendants must be granted.

## I. BACKGROUND

Viewing the light most favorable to the plaintiff, the facts are as follows.

On August 1, 2001, the plaintiff "underwent eye surgery . . . to have a cataract extracted from [his] right eye." Pl.'s Opp'n, Affidavit of Phillip Ross ("Ross Aff.") at 1. "The surgery was performed by members of the United States Navy at the United States Naval Hospital on Guam." Id. Defendant Canby, who was affiliated with the Guam Naval Hospital, performed the surgery. Pl.'s Opp'n at 1; see also Def.'s Mem., Exhibit ("Ex.") 1 (Deposition of Phillip Edgar Ross ("Ross Dep.")) at 33. At the time of the surgery, defendant Canby determined that the plaintiff's right eye "retained lens fragments . . . but elected to leave them" in the plaintiff's eye. Pl.'s Opp'n, Ex. 1 (January 25, 2006 Letter from David S. Friedman, M.D. ("Pl.'s Expert Opinion")) at 3. Following the cataract surgery, the plaintiff's eye pressure increased, however, defendant Canby failed to employ any immediate post-surgery procedures to lessen the pressure in the plaintiff's right eye. Id. Rather, she advised the plaintiff to wait to "see[] if the eye pressure improve[d]" on its own. Id. Defendant Canby also referred the plaintiff to Dr. Kim, who was affiliated with the Seventh-Day Adventist Clinic, for post-surgery care. Def.'s Mem., Ex. 1 (Ross Dep.) at 33-34.[2]

---

[2] While the plaintiff testifies to having been sent to Dr. Kim "[a]bout three-and-a-half weeks" after his initial surgery with defendant Canby, Def.'s Mem., Exhibit ("Ex.") 1 (Deposition of Phillip Edgar Ross ("Ross Dep.")) at 34, the record includes letters from Dr. Kim to defendant Canby discussing post-operative treatment that Dr. Kim administered to the plaintiff beginning on August 7, 2001, six days after the surgery, and including the message, "Thank you for your kind referral," Def.'s Mem., Ex. 8.

On August 7, 2001, Dr. Kim wrote to defendant Canby, stating that the plaintiff was scheduled for vitrectomy surgery on that day.  Def.'s Mem., Ex. 8 (August 7, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.) at 1.  For the next several weeks, Dr. Kim continued to write defendant Canby to keep Canby apprised of the plaintiff's care.  Def.'s Mem., Ex. 8 (August 8, 12, 14, 15, and 20, 2001 Letters from John Kim, M.D., to Margie Canby, M.D.) at 2-6.  On August 24, 2001, Dr. Kim wrote defendant Canby, reporting that he discussed with the patient "the possibility of further surgery," pending the plaintiff's anticipated consultation with another doctor.  Id., Ex. 8 (August 24, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.) at 7.[3]  Two days later, Dr. Kim again wrote defendant Canby, stating that a third surgery was "probabl[e]."  Id., Ex. 8 (August 26, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.) at 8.  At some point during the plaintiff's treatment, which was being overseen by Dr. Kim at the time, a treating doctor applied gas to the plaintiff's right eye in an effort to release the pressure in that eye.  Pl.'s Opp'n, Ex. 1 (Pl.'s Expert Opinion) at 3.  On August 29, 2001, Dr. Kim performed the vitrectomy surgery on the plaintiff's right eye.  Id., Ex. 8 (September 16, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.) at 9.  In a September 23, 2001 letter, Dr. Kim reported to defendant Canby about the plaintiff's status after the vitrectomy surgery and informed her that "[the patient] will make an [appointment] with [Canby] at the Naval Hospital in [two] weeks for [an intraocular pressure] check."  Def.'s Mem., Ex. 8 (September 23, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.) at 9.

After numerous consultations following his treatment in Guam, the plaintiff discovered that he had permanent, irreparable optic nerve damage and a loss in peripheral vision, which he

---

[3]   Exhibit 8 includes a series of letters from Dr. Kim to defendant Canby.  Because the letters are not numbered sequentially, the Court will refer to the pages in the order in which they were presented to the Court.

attributes to not receiving the vitrectomy surgery earlier following his initial cataract surgery performed by defendant Canby.  Def.'s Mem., Ex. 1 (Ross Dep.) at 42-44; see also Compl. ¶¶ 5-6.  The plaintiff filed an administrative claim regarding his permanent eye damage with the Department of the Navy on November 18, 2002, seeking monetary damages, which the Department of the Navy denied on March 18, 2004.  Compl. ¶ 2.

## II.  STANDARD OF REVIEW

Conversion of a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6)[4] into a motion for summary judgment under Rule 56 is proper where "all parties both [had] a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56' and a chance 'to pursue reasonable discovery.'"  Taylor v. FDIC, 132 F.3d 753, 765 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 12(b)(6)) (citation omitted); see Fed. R. Civ. P. 12(b) & 56.  "Given that the [defendant's] motion[] [was] in the alternative for summary judgment and that the parties had the opportunity to submit . . . materials in support and in opposition, it is not unfair to [the plaintiff] to treat the decision[] as [one for] summary judgment[]."  Americable Int'l v. Dep't of Navy, 129 F.3d 1271, 1274 n. 5 (D.C. Cir.1997).  The Court will therefore convert the motion into one for summary judgment and consider the record evidence submitted by both parties.

To grant a motion for summary judgment under Rule 56(c), this Court must find that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[4] The United States' motion for dismissal hinges entirely on its argument that this Court is not the proper venue for the litigation of this action, whereas, Guam is.  Def.'s Mem at 5-8.  Because, as the plaintiff correctly points out in his opposition, Pl.'s Opp'n at 2, the United States' failure to raise any jurisdictional or venue related arguments in its initial filing (its answer) resulted in the waiver of the venue challenge, see Fed. R. Civ. P. 12(h), the Court will evaluate only the United States' alternative summary judgment arguments.

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 333 (D.C. Cir.1992). However, the non-moving party cannot rely on "mere allegations or denials . . . , but . . . must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted). Under Rule 56(c), if a party fails to "establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial," summary judgment is warranted. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of establishing the absence of evidence that supports the non-moving party's case. Id.

### III. LEGAL ANALYSIS

"Under the Federal Tort Claims Act, the United States is liable in damages to an injured party for injuries arising from a negligent act or omission of its employees, if a private person would be liable under the law of the place where the act or omission occurred." Rutledge v. United States, Civil No. 06-00008, 2008 WL 3914965 at *13 (D. Guam 2008) (citing 28 U.S.C. § 1346(b) (2000)). The law of the jurisdiction where the alleged act or omission occurred governs the applicable standard of substantive tort liability. Id. In this case, Guam law applies, which employs the standard elements of negligence:

> (1) A duty, or obligation, recognized by law, requiring the person to conform to a certain standard of conduct, for the protection of others against unreasonable risks of harm;
>
> (2) A breach of that duty, or failure to conform to the required standard;
>
> (3) Proximate cause (a close and causal connection, also known as "legal cause"); [and]

(4) Actual loss or damage resulting to the interests of another.

Merchant v. Nanyo Realty, Inc., Civil No. CVA 98-005, CV 1577-93  1998 WL 964571 at *5 (Guam 1998) (citation omitted).

As to the standard of care applicable to physicians, the Guam Code states: "The prevailing standard of duty, practice, or care by a reasonable physician in the same field practicing medicine in the community at the time of the alleged malpractice shall be the standard applied in the arbitration."  Guam Code Ann. Tit, 10 § 10106 (2006).  "Although there is no Guam [case] law on the issue of standard of care, generally in cases of medical malpractice what is or is not the proper standard is a question for experts and it should be established only by their expert testimony."  Rutledge, 2008 WL 3914965 at *14.  "'In professional malpractice cases, expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care, except in cases where the negligence is obvious to laymen.'"  Id. (citing Garibay v. Hemmat, 74 Cal. Rptr. 3d 715, 719 (Ct. App. 2008)).

The plaintiff's theory for his negligence claim hinges on his contention that he should have received the vitrectomy surgery more promptly following his cataract surgery to relieve the pressure in his right eye, and the failure to receive that surgery in a more timely manner led to irreparable impairment of the vision in his right eye.[5]  Def.'s Mem., Ex. 1 (Ross Dep.) at 47.  In support of the plaintiff's theory that the defendant breached the standard of care, the plaintiff

---

[5] The plaintiff testified that he heard defendant Canby say she "felt like the lens itself should have never have been dropped" and appears to surmise that this also caused irreparable damage to the vision in his right eye. Def.'s Mem., Ex. 1 (Ross Dep.) at 47. However, if this position is being advanced, because the plaintiff's expert never references anything related to a "drop" of the plaintiff's lens in his report, the Court cannot find that the plaintiff's allegation can survive summary judgment without any medical evidence to support it. On the other hand, to the extent that the plaintiff's characterization of the drop of his lens refers to the defendants' act of leaving lens fragments in the plaintiff's eye, those allegations are addressed in the Court's analysis.

offers the opinion of an expert, David S. Friedman.  Pl.'s Opp'n, Ex. 1 (Pl.'s Expert Opinion).  Dr. Friedman comments on the conduct of both defendant Canby and Dr. Kim, id., but Dr. Kim is not employed by the United States or a defendant in this case, Def.'s Mem., Ex. 1 (Ross Dep.) at 33.  Dr. Friedman concluded that when conducting cataract surgery, the surgery performed by defendant Canby, "it is often okay to leave [lens] fragments in the eye," so long as the amount of lens fragments is "20% or less."  Pl.'s Opp'n, Ex. 1 (Pl.'s Expert Opinion) at 3.  It is undisputed that defendant Canby left lens fragments in the plaintiff's eye when she performed the plaintiff's cataract surgery, but Dr. Friedman does not maintain that this act amounts to a breach of the defendants' duty of care owed to the plaintiff.  Id.  To the contrary, Dr. Friedman opined that it was "unlikely" that the plaintiff's post-surgery eye pressure "was due to the retained lens fragments."  Id.  Moreover, following the cataract surgery on August 1, 2001, Def.'s Mem., Ex. 4 (Operation Report) at 1, and a consultation on August 7, 2001, Def.'s Mem., Ex. 6 (Defendant Canby's August 7, 2001 Notes) at 1, it does not appear that defendant Canby saw the plaintiff again until sometime in October 2001, see id. at Ex. 8 (September 23, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.) at 10.  It was Dr. Kim who oversaw the plaintiff's treatment after his cataract surgery.  Id.; see also Def.'s Mem., Ex. 6 (Defendant Canby's August 7, 2001 Notes) at 1.

      Dr. Friedman also concluded that although "[s]ome [treating physicians] might have considered an earlier return to the [operating room] for a glaucoma procedure" upon learning of the post-surgery eye pressure, because "it typically will take more than a week [after a surgery] for retained fragments to clog the trabecular meshwork [of the eye] and cause eye pressure elevation," it "seems reasonable" that the treating doctors waited "for more than a week" to "see[] if the [plaintiff's] eye pressure improve[d]" before conducting further procedures.  Pl.'s Opp'n,

Ex. 1 (Pl.'s Expert Opinion) at 3. In other words, no where in his letter does Dr. Friedman conclude that the actions taken while the plaintiff was in the care of defendant Canby, and thus the United States due to its employment relationship with defendants, amounted to an act or omission that transgressed their duty of care owed to the plaintiff, let alone caused the harm for which the plaintiff seeks to establish liability. See Rutledge, 2008 WL 3914965 at *14. Indeed, it is the opinion of Dr. Friedman that the care the plaintiff received when he was being treated by Dr. Kim "exacerbated the problem," and the plaintiff's "eye pressure spiked and remained elevated after the gas was placed and until a glaucoma procedure was performed." Pl.'s Opp'n, Ex. 1 at 3. And the record shows that the "gas/fluid exchange" was part of the vitrectomy surgery performed by Dr. Kim and not defendant Canby. Def.'s Mem., Ex. 8 (August 15, 2001 Letter from John Kim, M.D., to Margie Canby, M.D.). Overall, Dr. Friedman attributes the harm sustained by the plaintiff to the failure to take "corrective action" after August 12, 2001, Pl.'s Opp'n, Ex. 1 at 3, a time during which the letters from Dr. Kim to defendant Canby demonstrate that the plaintiff was in the care of Dr. Kim and the Seventh-Day Adventist Clinic. See generally Def.'s Mem., Ex. 8. Indeed, beginning on August 7, 2001, Dr. Kim thanks defendant Canby in each of his letters for her "kind referral" of the plaintiff as a patient. Id.

     Based on the plaintiff's failure to support his allegations with expert evidence beyond his own mere speculation that it was the actions of defendant Canby and the United States that led to his permanent vision loss in his right eye, the Court cannot conclude that the plaintiff can maintain his negligence claim against these defendants.

## IV.  CONCLUSION

For the reasons set forth in this memorandum opinion, the Court will grant the United States' motion for summary judgment and dismiss this case because as demonstrated in the United States' motion, a negligence claim cannot be maintained against either defendant.[6]

**SO ORDERED** this 23rd day of December, 2008.

```
            _____/s/_____
            REGGIE B. WALTON
            United States District Court Judge
```

---

[6] An Order consistent with this Memorandum Opinion has been filed concurrently herewith.